## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| John Collingham, M.D., Lori Aasen, R.N.P, Megan Ackerson, RN, Elizabeth Brandenburg, O.T., Jennifer Chapman, R.N., Laura Daily, Erin Doepke, Gretchen Gilmore, R.N., Kathy Hanek, Robyn Hobmeier, R.N., Jolene Jakubowsky, R.N., Patty Kark, R.N., Jill Martens, Jennifer Njagi, R.N., Rebecca Novak, L.P.N., Sandy Schlossin, R.N., Diane Stewart, Jessica Stratton, R.N., Ellen Tichich, R.N., Michelle Voegele, <br><br> Plaintiffs, <br><br> v. <br><br> City of Northfield, d/b/a Northfield Hospital and Clinic, Frederick Alan Rogers, Sarah R. Carlsen, Richard D. Estenson, C.C. Lindstroth, Jessica Peterson White, and Robert Shepley, M.D., <br><br> Defendants. | Case. No. _____ <br><br><br><br><br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs above-named, for their Complaint against Defendant City of Northfield, d/b/a  Northfield Hospital and Clinic ( "Northfield Hospital" or the "Hospital"), Frederick Alan Rogers, Sarah R. Carlsen, Richard D. Estenson, C.C. Lindstroth, Jessica Peterson White and Robert Shepley, M.D. ("Individual Defendants) (collectively referred to herein as "Defendants'), state and allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this case to address their employer's failure to accommodate, or even to attempt to accommodate, their sincerely-held religious beliefs and serious health conditions.

2.      Plaintiffs are all present or former employees of the Hospital, some of whom have more than twenty years' experience working for the Hospital.

3.      The Hospital mandated that all employees receive the COVID-19 vaccination as a condition of continuing their employment.  Several of the Hospital's employees including Plaintiffs, objected to receiving these vaccinations because of their sincerely-held religious beliefs and/or medical conditions which creates a serious risk from the vaccines.  Some of the health conditions raised by Plaintiffs include cancer treatment, severe migraines, neurological issues, pregnancy, and numerous other health issues.

4.      Many of the Plaintiffs applied for an accommodation based on their religious beliefs and/or medical conditions.  Upon filing their "exemption" requests, however, several Plaintiffs were told by their managers that exemptions were going to be "difficult" or "impossible" to obtain. The predetermined nature of Defendants' denial of the requests quickly became clear.

5.      With one exception, every Plaintiff who applied for religious exemption from the COVID-19 vaccination requirement was turned down.  These denials were made via form letter.  Each letter was identical for each Plaintiff, with one exception. The letters for each employee were numbered consecutively, thus making each denied employee a number in the Hospital's system.  While every Plaintiff was told he or she had a valid basis

2

for a religious exemption, they were nevertheless informed that *every single one* of the employees constituted a "direct threat" to the Hospital, its employees or its patients and their exemption requests were denied. This despite a year or so earlier when many of the same employees (Plaintiffs) were requested to work additional shifts to help save lives and treat ill patients during the height of the pandemic. These same employees were working extraordinary additional hours. The Hospital's blanket written exemption denials appear to have been cut and pasted from a template.

6.      The Hospital however offered one religious exemption to an employee for a particular job which it was finding difficult to fill. When that employee rejected the proffered exemption and quit, the Hospital, on information and belief, offered the same exemption to another employee, but only on the condition that the employee accept the job in question. So an exception to the blanket denial process was made not based on the nature of the religious exemption request but rather on the Hospital's arbitrary needs.

7.      All requests for medical exemption were denied. One Plaintiff who was undergoing cancer treatment was told that her cancer was not a "sufficient contraindicator" to avoid vaccination (this employee was notified of the rejection of her request on the day she was undergoing surgery for her cancer). The exemption denial meant this Plaintiff was going to lose her job. One employee who applied for a medical exemption was pregnant at the time of her application. When she refused to be vaccinated, she was ultimately fired.

8.      Following the exemption denials, the Hospital opened an "appeal period," during which Plaintiffs were allowed to submit "additional information" in support of their exemption requests. The majority of the Plaintiffs submitted appeals. All appeals were

uniformly denied, and the Hospital went as far as assigning a number for each employee on the form-letter denials.  All Plaintiffs were denied using verbatim language, resulting from a blanket application of a rule. There was no case by case analysis nor any interactive discussion with any Plaintiff regarding their decision or potential accommodation.

9.      The Hospital has further informed Plaintiffs that those who lose their job because of the vaccine mandate will forfeit all accumulated Paid Time Off ("PTO"), which amounted (in some cases) to hundreds of hours of earned time, valued at many thousands of dollars. Plaintiffs were informed that if they resigned, they would at least receive their earned PTO.  Several did resign and have not received any PTO payment.

10.      As of the date of this Complaint, several Plaintiffs have either lost their jobs as a result of the above-described actions or have been forced to quit their employment because of the Hospital's treatment and their unpaid employment status.

## JURISDICTION AND VENUE

11.      Each of the Plaintiffs have fulfilled the jurisdictional requirements of Title VII of the Civil Rights Act of 1964, including the filing of a Charge with the EEOC, and the receipt of a right-to-sue letter from EEOC following closure of the file, all in compliance with 42 U.S.C. § 2000f-5(1).

12.      This Court has original subject matter jurisdiction over this matter, as it raises claims pursuant to federal statute and the United States Constitution, pursuant to 29 U.S.C. § 1331.  This Court further has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 29 U.S.C. § 1367.

4

13.     This Court has personal jurisdiction over the City of Northfield, d/b/a Northfield Hospital and Clinic, because it is a Minnesota Home Rule Charter City.

14.     This Court has personal jurisdiction over Northfield Hospital and Clinic as an entity as it is a business operating in and located in the State of Minnesota.

15.     This Court has personal jurisdiction over each of the individually-named Defendants as they are, on information and belief, residents of the City of Northfield in the State of Minnesota.

16.     Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(e)(1) because the actions giving rise to this cause of action occurred in whole, or in part, in Dakota County, Minnesota, and Defendant Northfield Hospital and Clinic conducts business in the State of Minnesota.

## PARTIES

17.     Plaintiffs are current or former employees of Northfield Hospital and Clinic.

18.     Northfield Hospital and Clinic is a health care organization with its principal place of business located at 2000 North Avenue, Northfield, Minnesota 55057.  Northfield Hospital and Clinic does business at a number of locations throughout Southern Minnesota, and maintains Clinic facilities in the Minnesota Cities of Farmington, Lakeville, Lonsdale, Kenyon, and Faribault, and also operates several additional physical facilities in the town of Northfield.  Northfield Hospital and Clinic is wholly-owned and operated by the City of Northfield.

19.     The City of Northfield is a Home Rule Charter City located in Rice and Dakota Counties, Minnesota.  The City of Northfield owns and operates the Northfield

Hospital and Clinic, and the Northfield City Council appoints the Hospital and Clinic's Board of Directors.

20.     Frederick Alan Rogers is a resident of Northfield, Minnesota, and currently serves as Chair of the Northfield Hospital and Clinic Board of Directors.

21.     Sarah Carlsen is a resident of Northfield, Minnesota and currently serves as Vice-Chair of the Northfield Hospital and Clinic Board of Directors.

22.     Richard D. Estenson is a resident of Northfield, Minnesota and currently serves as a member of the Northfield Hospital and Clinic Board of Directors.

23.     C.C. Lindstroth is a resident of Northfield, Minnesota and currently serves as a member of the Northfield Hospital and Clinic Board of Directors.

24.     Jessica Peterson White is a resident of Northfield, Minnesota, a member of the Northfield, Minnesota City Council, and also serves as a member of the Northfield Hospital and Clinic Board of Directors.

25.     Robert Shepley, M.D. is resident of Northfield, Minnesota and currently serves as a member of the Northfield Hospital and Clinic Board of Directors.  In addition, Dr. Shepley is affiliated with, and has staff privileges at, the Northfield Hospital.

26.     Individual Defendants all had input into and control over the policies of the Hospital with respect to the legal rights, continuing employment, and termination of the Plaintiffs.

27.     In August of 2021 the Hospital announced a policy requiring all staff to become vaccinated against COVID-19.  The Hospital also announced that both medical and religious exemptions from this requirement, although numerous managers told

Hospital Plaintiffs that the exemptions would be virtually impossible to obtain. The Hospital has, in fact, pursued a practice or policy that resulted in blanket denials. The Hospital went so far as to use a form letter which numbered employees to issue its denials. The denial verbiage was identical for every case. Only the number changed for the employee in question.

28.   Plaintiff Collingham (#29) is an emergency room physician who worked for the Hospital for over fifteen years. Consistent with Hospital policy, he submitted a request for a religious exemption from the COVID-19 vaccination requirement. That request was denied, as was Collingham's subsequent appeal of that decision. On October 14, 2021, Doctor Collingham was informed by his supervisor that another emergency room physician he worked with on October 6, 2021, was exhibiting symptoms of COVID-19. The other physician tested positive for COVID-19 after his shift. This colleague had been vaccinated so he was allowed to work his shift despite the symptoms. As of October 16, 2021 Collingham, on the other hand, was placed on unpaid "administrative leave" and officially fired on October 31, 2021 because of his refusal to take the vaccine in violation of his religious beliefs.

29.   Plaintiff Aasen (#26) is a Registered Nurse Practitioner who worked at Northfield Hospital and Clinic's Express Care Clinic since 2019. Consistent with Hospital policy, she submitted a request for both medical and religious exemption from the COVID-19 vaccination requirement. Both requests were denied. After being threatened with loss of her PTO if she refused to take the vaccine and was terminated as well as other harassment, Aasen resigned her position effective October 14, 2021, under duress and in

order to preserve her Paid Timed Off payment.  On November 4, 2021, Aasen received her final paycheck from the Hospital with papers that stated she was "terminated."  The Hospital did not pay her the 300+ hours of accumulated PTO she earned and had been promised.

30.     Plaintiff Ackerson (#25) is a Registered Nurse who worked at the Hospital for twelve years.  Consistent with Hospital policy, she submitted a request for a religious exemption from the COVID-19 vaccination requirement.  That request was denied, as was Ackerson's subsequent appeal of that decision.  As of October 15, 2021 Ackerson was placed on unpaid "administrative leave" and officially fired on October 31, 2021 because of her refusal to violate her religious beliefs.

31.     Plaintiff Brandenburg is an Occupational Therapist who had been a regular, part-time employee of the Hospital since October of 2020.  Consistent with Hospital policy, she submitted a request for a religious exemption from the COVID-19 vaccination requirement.  Brandenburg never received a decision regarding that request.  While waiting for her exemption decision, she was told that management employees were saying no exemptions would be granted, and that she would be forfeiting her earned PTO by going through the exemption process.  Therefore, on September 30, 2021 Brandeburg resigned, under duress, in order to protect her religious faith as well as her earned benefits.

32.     Plaintiff Chapman (#35) is a Registered Nurse who worked in the Hospital's labor delivery unit.  Consistent with Hospital policy, she submitted a request for a religious exemption from the COVID-19 vaccination requirement.  Chapman was initially told that she had been approved for exemption, but then was told the Hospital was unable to

8

accommodate her request.  As of October 15, 2021 Chapman has been on unpaid "administrative leave" and official fired on October 31, 2021 because of her refusal to violate her religious beliefs.

33.    Plaintiff Daily (#44) is a Health Information Specialist who worked at the Hospital  for more than twenty-two years.  Consistent with Hospital policy, she applied for a medical exemption from the COVID-19 vaccination requirement.  That request was denied.  Daily did not appeal that decision as she was unaware that an appeal process was available.  Daily was told by her supervisor that if she didn't resign, she would lose all of her Paid Time Off (4 ½ weeks).  Therefore, on September 30, 2021, under duress, Daily put in a resignation that stated she was being forced to resign in order to collect her PTO.

34.    Plaintiff Doepke (#32) is a Surgical Technician who was employed by the Hospital for two and one-half years.  Consistent with Hospital policy, she submitted a request for both medical and religious exemption from the COVID-19 vaccination requirement.  Both requests were denied.  Doepke did not appeal those decisions as she was unaware that an appeal process was available.  As of October 15, 2021 Doepke was placed on unpaid "administrative leave" and officially terminated on October 31, 2021 because of her refusal to violate her religious beliefs.

35.    Plaintiff Gilmore (#56) is a Registered Nurse who worked in the surgical department at the Hospital, and also worked on a casual basis at the Hospital as an Imaging Technologist.  Gilmore worked at the Hospital for over thirteen years.  Consistent with Hospital policy, she submitted a request for both medical and religious exemption from the COVID-19 vaccination requirement and the flu vaccination requirement.  Both requests

were denied.  Gilmore appealed the decision regarding COVID-19 vaccination, and was again denied. As of October 15, 2021 Gilmore was placed on unpaid "administrative leave" and officially terminated on October 31, 2021 because of her refusal to violate her religious beliefs.

36.     Plaintiff Hanek (#45) is a Paramedic/EMT who worked for the Hospital for nearly fifteen years.  Consistent with Hospital policy, she submitted a request for both medical and religious exemption from the COVID-19 vaccination requirement.  Hanek has a physical disability which has previously been recognized by the Hospital, and on which she based her request for medical exemption.  Both requests for exemption were denied. Hanek appealed those decisions, but was again denied. As of October 15, 2021 Hanek was placed on unpaid "administrative leave" and officially terminated on October 31, 2021 because of her refusal to violate her religious beliefs.

37.     Plaintiff Hobmeier (#11) is a Registered Nurse who has worked for the Hospital for over fourteen years in direct patient care and surgery.  Consistent with Hospital policy, she submitted a request for both medical and religious exemption from the COVID-19 vaccination requirement.  At the time of her request, she was on a medical leave for treatment of breast cancer.  Her chemotherapy treatment ended in July 2021. She then underwent reconstructive surgery. Immediately thereafter she was diagnosed with COVID-19 on August 13, 2021.  A hospital Representative told Hobmeier that merely having cancer was not a "valid contraindication," and thus she could expect to be denied a medical exemption. She was in fact denied that exemption on October 7, 2021. Hobmeier's religious exemption was also denied. Despite her exemption requests and her natural

immunity, Hobmeier was terminated on November 7, 2021 for refusing to violate her religious beliefs and refusing to endanger herself due to her medical condition.

38.     Plaintiff Jakubowsky (#27) is a Registered Nurse in the Hospital's Obstetrics Unit, where she worked for approximately one year.  Consistent with Hospital policy, she submitted a request for religious exemption from the COVID-19 vaccination requirement.  That request was denied.  Jakubowsky appealed that decision, but was again denied.  As of October 15, 2021 Jakubowsky was placed on unpaid "administrative leave" and officially fired on October 31, 2021 because of her refusal to violate her religious beliefs.

39.     Plaintiff Kark (#62) is a Registered Nurse who was employed by the Hospital as a Breast Care Navigator.  Consistent with Hospital policy, she submitted a request for religious exemption from the COVID-19 vaccination requirement.  That request was denied.  Kark appealed that decision, but was again denied.  As of October 15, 2021 Kark was placed on unpaid "administrative leave" and officially fired on October 31, 2021 because of her refusal to violate her religious beliefs.

40.     Plaintiff Martens (#15) is a Patient Service Specialist at the family health clinic, where she worked for the past ten months.  Consistent with Hospital policy, she submitted a request for both medical and religious exemption from the COVID-19 vaccination requirement.  Both requests were denied.  Martens appealed those decisions, but was again denied.  As of October 15, 2021 Martens was placed on unpaid "administrative leave" and officially fired on October 31, 2021 because of her refusal to violate her religious beliefs.

41.     Plaintiff Njagi (#61) is a Registered Nurse in the Hospital's surgical unit, where she worked since June of 2020.  Consistent with Hospital policy, she submitted a request for religious exemption from the COVID-19 vaccination requirement.  That request was denied.  Njagi appealed that decision, but was again denied.  As of October 15, 2021 Njagi was placed on unpaid "administrative leave" and officially fired on October 31, 2021 because of her refusal to violate her religious beliefs.

42.     Plaintiff Novak (#5) is a Licensed Practical Nurse who worked at the Hospital's Womens' Health Center since approximately September of 2015.  Consistent with Hospital policy, she submitted a request for a religious exemption from the COVID-19 vaccination requirement. That request was denied.  Novak appealed that decision, but was again denied.  As of October 15, 2021 Novak was placed on unpaid "administrative leave" and officially fired on October 31, 2021 because of her refusal to violate her religious beliefs.

43.     Plaintiff Schlossin (#100) is a Registered Nurse in the Hospital's Emergency Room, where she worked since June of 2021.  Consistent with Hospital policy, she submitted a request for religious exemption from the COVID-19 vaccination requirement. That request was denied.  Schlossin appealed that decision, but was again denied.  As of October 15, 2021 Schlossin has been on unpaid "administrative leave" and official fired on October 31, 2021 because of her refusal to violate her religious beliefs.

44.     Plaintiff Stewart (#28) is a Patient Services Representative at the Lakeville Clinic, where she worked for over twelve years.  Consistent with Hospital policy, she submitted a request for religious exemption from the COVID-19 vaccination requirement.

12

That request was denied. As of October 15, 2021 Stewart was placed on unpaid "administrative leave" and officially fired on October 31, 2021 because of her refusal to violate her religious beliefs.

45.     Plaintiff Stratton (#50) is a Registered Nurse in the Hospital's Birthing Center, where she worked for approximately three and one-half years. Stratton is currently pregnant. Consistent with Hospital policy, she submitted a request for both medical and religious exemption from the COVID-19 vaccination requirement. Both requests were denied. As of October 15, 2021 Stratton was placed on unpaid "administrative leave" and officially fired on October 31, 2021 because of her refusal to violate her religious beliefs.

46.     Plaintiff Tichich (#41) is a Registered Nurse, and a Clinical Nurse Educator at the Hospital, where she worked for over thirteen years. Tichich suffers from a neurological condition. Consistent with Hospital policy, she submitted a request for both medical and religious exemption from the COVID-19 vaccination requirement. Both requests were denied. Tichich appealed the decision regarding her religious exemption request, but was again denied. As of October 15, 2021 Tichich was placed on unpaid "administrative leave" and officially fired on October 31, 2021 because of her refusal to violate her religious beliefs.

47.     Plaintiff Voegele (#9) is a Paramedic/EMT, who worked for the Hospital for over twenty-two years. Consistent with Hospital policy, she submitted a request for religious exemption from the COVID-19 vaccination requirement. That request was denied. Voegele appealed that decision, but was again denied. As of October 15, 2021

Voegele was placed on unpaid "administrative leave" and officially fired on October 31, 2021 because of her refusal to violate her religious beliefs.

48.     Plaintiffs bring this action for discrimination in violation of federal law and Minnesota law for failure to accommodate based on medical conditions and/or sincerely-held religious beliefs, and for coercing medical treatment under penalty of termination of employment, all in violation of the law.

49.     All Plaintiffs have suffered great economic damage, emotional distress, and humiliation from Defendants' wrongful and illegal actions.

## BACKGROUND

50.     During the pandemic in 2020, Plaintiffs were asked by the Hospital to work numerous additional shifts in order to cover the increase in treatment and care for patients during the height of the pandemic.  At that time Plaintiffs, while unvaccinated, were fully accepted and relied upon heavily by the Hospital to aid in patient care.

51.     As part of its implementation of its COVID-19 vaccination mandate, Northfield Hospital and Clinic announced that all employees who were not vaccinated would be suspended, without pay, from employment effective October 15, 2021.  The Hospital characterized these terminations as mandatory "administrative leaves," during which the employees were not allowed to use any of their accumulated and earned PTO. The Hospital further stated that these "administrative leaves" would be converted to involuntary "resignations" effective October 31, 2021.

52.     The Hospital went on to state that pursuant to its PTO policy, those Plaintiffs who lost employment because of the vaccine mandate would forfeit any accumulated PTO.

14

53.     Finally, the Hospital threatened that anyone who lost his or her job because of vaccine hesitancy would be ineligible for Minnesota Unemployment Insurance benefits. In short, the Hospital announced that anyone who refused the vaccine would be punished to the maximum extent available, by either being actually or constructively discharge.

54.     Seemingly in compliance with its legal obligations under both State and Federal law, the Hospital also announced a process for Plaintiffs to request medical and/or religious exemption from the COVID-19 vaccination requirement.  On information and belief, the Hospital created an *ad hoc* committee to review such exemption requests.  As noted above, Plaintiffs submitted requests for exemptions.  *Every* known request for religious exemption (with one unique exception) was denied by the Hospital.  All medical exemptions were also denied.

55.     The Hospital took the effective position that *any* accommodation would automatically constitute an "undue burden."  All of the exemption denials were issued using the same form letter.  That form letter read, in part, as follows:

> NH+C finds that your unvaccinated status will pose a direct threat to the health and safety of the patient population and the people you work with.
>
> NH+C finds that accommodation of your unvaccinated status will pose an undue burden to NH+C staff, patients and operations.

As noted, every applicant for exemption received identical language in a letter.  The email message which contained the letter to employees also contained a unique number assigned to the employee.  These numbers, which were sequential, are the only differentiation in the at least one hundred denials of religious or medical exemptions issued by the Hospital.  No explanation was (or has been) given as to ***everyone's*** "direct threat" or "undue burden."

15

56.     There was also no case by case analysis or interactive process to discuss each employees' exemption request or possible accommodation.

57.     In its form denial letters, the Hospital announced that it would accept appeals of its uniform denial decisions.  Most of the Plaintiffs took advantage of that process and submitted additional information supporting their requests for exemption.  On or about October 1, 2021 the Hospital again issued identical denial letters to every employee who appealed.  The transmittal email messages also contained the employee's (apparently) assigned denial number.  On information and belief, every appeal of exemption denials was further denied by the Hospital.

58.     The Hospital used its PTO policy as a weapon against its employees in an attempt to get them to accept the vaccination mandate, in that employees who lose their employment because of the mandate will forfeit accumulated and earned PTO.  In some cases, this forfeiture involves hundreds of hours of pay, to which the employees would otherwise be entitled.  Some of the employees, as noted above, have been forced to submit resignations in order to protect themselves.  These resignations were uniformly made under duress, and constitute constructive discharges.

59.     Plaintiffs uniformly submitted good-faith statements of their sincerely-held religious beliefs, with explanations of how their faith constrained them from accepting the COVID-19 vaccinations.  The Plaintiffs were uniformly denied these exemptions by the Hospital's *ad hoc* committee.  The majority of the Plaintiffs appealed those denials, relying on the Hospital's statement that appeals would be considered in good faith. The appeals were, again, uniformly denied.

16

60.     The Hospital went so far as to label the vaccinated employees by having a green colored tag worn on their employee badge and unvaccinated employees wearing no tag.

61.     Plaintiffs Aasen, Brandenburg, Daily, Doepke, Gilmore, Hanek, Hobmeier, Martens, Novak, Stratton and Tichich submitted requests for medical exemption from the Hospital's COVID-19 vaccination mandate.  These requests were uniformly denied.  The majority of the Plaintiffs appealed those denials, relying on the Hospital's statement that appeals would be considered in good faith.  This did not happen. The appeals were, again, denied.

62.     With the exception of Plaintiffs Aasen, Brandenburg, and Daily, who were forced to resign under duress, all Plaintiffs were placed on involuntary "administrative leave" effective October 15, 2021, during which they were not allowed to use their accumulated and earned PTO.  Those Plaintiffs on involuntary "leave" were formally fired from their employment effective October 31, 2021.  All of these "leaves" were involuntary and unpaid. These "leaves" and subsequent terminations constituted   constructive terminations of employment as of October 15, 2021.  All employees who were terminated forfeited their accumulated PTO, pursuant to the Hospital's decision regarding its PTO policy.

## FIRST CAUSE OF ACTION

### Discrimination and Failure to Accommodate under Title VII
of the Civil Rights Act of 1964

63.   Plaintiffs restate and reallege paragraphs 1 through 62 as if fully set-forth here.

64.   Defendant Northfield Hospital and Clinic is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

65.   Each individual Plaintiff is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

66.   Title VII of the Civil Rights Act prohibits discrimination on the basis of religion.  *Id.* § 2000e-2.  The Act further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs.  *Id.* § 2000e(j).

67.   Guidance issued by the Equal Employment Opportunity Commission requires that requests for reasonable accommodation be considered based on their individual, particularized circumstances, and that any claim of undue hardship by the employer be assessed on a case-by-case basis rather than through application of a blanket rule.

68.   The Plaintiffs, in their requests for accommodation from the Hospital's vaccination mandate, made wide-ranging and individualized requests for accommodation. The Plaintiffs further made varying offers of potential accommodations and compromises.

69.   In response to the Plaintiffs' requests for reasonable accommodation of their sincerely-held religious beliefs, the Hospital and its individual managers applied a uniform,

blanket rule in rejecting all but one request, in violation of both Title VII and the EEOC's

persuasive guidance on reasonable accommodation.

70.    Despite the Plaintiffs' consistent offers to engage in dialogue, the Hospital

refused throughout to engage in the interactive process, and instead rejected each Plaintiff

for identical reasons, using an identical form letter.

71.    The Hospital's actions constitute discrimination on the basis of religion and

failure to accommodate, all in violation of 42 U.S.C. §§ 2000(e)-2 and 2000(e)(j).

72.    Because of the Hospital's unlawful actions, the Plaintiffs individually have

each suffered and continue to suffer economic and other damages in amounts to be proven

at trial, including front pay, back pay, emotional distress damages, compensatory damages,

punitive damages, and attorney fees in excess of $75,000.

## SECOND CAUSE OF ACTION

### Discrimination and Failure to Accommodate under the
### Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*

73.    Plaintiffs restate and reallege paragraphs 1 through 72 as if fully set-forth

here.

74.    Northfield Hospital and Clinic is an "employer" within the meaning of 42

U.S.C. § 12111(5)(A).

75.    Each Plaintiff in this matter is an "employee" within the meaning of 42

U.S.C. § 12111(4).

76.     The Americans with Disabilities Act requires employers to make reasonable accommodation to qualified employees with disabilities, and further to engage in the "interactive process" with employees in order to determine whether such accommodations are possible. *Id*. § 12112(b)(5).

77.     Plaintiffs Collingham, Aasen, Daily, Doepke, Gilmore, Hanek, Hobmeier, Martens, Novak, Stratton and Tichich all filed, pursuant to their legal rights under the ADA as well as Hospital policy, requests for medical exemption from the COVID-19 vaccination requirement.  All requests were denied with an identical letter, using identical "reasoning."

78.     Northfield Hospital and Clinic failed to engage in an interactive process with the above Plaintiffs regarding their impairments and claimed disabilities, and thus made decisions regarding exemption requests based on incomplete and inaccurate information.

79.      Northfield Hospital and Clinic further, through its management and in particular its *ad hoc* exemptions committee, applied a rule indicating that no requests for medical exemption would be granted, or in the alternative that any possible accommodation requests would constitute an "undue burden."  The Hospital's actions in this regard violated its duties under the Americans with Disabilities Act.

80.     As a result of Northfield Hospital and Clinic's wrongful actions, Plaintiffs Collingham, Aasen, Daily, Doepke, Gilmore, Hanek, Hobmeier, Martens, Novak, Stratton and Tichich individually have each suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## THIRD CAUSE OF ACTION

### Failure to Accommodate under the
### Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et seq.*

81.     Plaintiffs restate and reallege paragraphs 1 through 80 as if fully set forth here.

82.     Defendant Northfield Hospital and Clinic is an "employer" within the meaning of the Minnesota Human Rights Act, Minn. Stat. § 363A. 03, Subd. 16.

83.     At all times relevant, Plaintiffs were "employees" of Northfield Hospital and Clinic within the meaning of the Minnesota Human Rights Act, *Id*. § 363A.03, Subd. 15.

84.     The Minnesota Human Rights Act makes it illegal for employers to discriminate against its employees based on disability.  *Id*. § 363A.02, Subd. 1(1).

85.     As part of its obligation not to discriminate based on disability, the Hospital is required to provide reasonable accommodation of the known disabilities to its employees, unless such reasonable accommodation would constitute an "undue burden" or the employee(s) in question would constitute a threat to themselves or others.  Minn. Stat. § 363A.08, Subd. 6.

86.     Plaintiffs Collingham, Aasen, Daily, Doepke, Gilmore, Hanek, Hobmeier, Martens, Novak, Stratton and Tichich all filed, pursuant to their legal rights under the Minnesota Human Rights Act as well as Hospital policy, requests for medical exemption from the COVID-19 vaccination requirement.  All requests were denied with an identical letter, using identical "reasoning."

87.     The Hospital, through its management, and in particular its *ad hoc* exemptions committee, applied a rule indicating that no requests for medical exemption would be granted, or in the alternative that any possible accommodation of its employees' accommodation requests would constitute an "undue burden."  The Hospital's actions in this regard were illegal and in violation of the terms of the Minnesota Human Rights Act.

88.     Defendants Rogers, Carlsen, Estenson, Lindstroth, White and Shepley's actions, in their capacity as Board Members of Defendant Northfield Hospital and Clinic, in promulgating, promoting and encouraging the Hospital's actions with regard to Plaintiffs' requests for reasonable accommodation, constitute "aiding and abetting" discrimination in violation of Minn. Stat. § 363A.14.

89.     Because of Defendants' illegal conduct, Plaintiffs individually have each suffered economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FOURTH CAUSE OF ACTION

### 42 U.S.C. § 1983 – Deprivation of Rights under Color of State Law

90.     Plaintiffs restate and reallege paragraphs 1 through 89 as if fully set-forth here.

91.     Defendant Northfield Hospital and Clinic is a wholly-owned subsidiary of the City of Northfield, a Minnesota Home Rule Charter City operating pursuant to the laws of the State of Minnesota.  Defendant Northfield Hospital and Clinic is thus a governmental

entity, operating pursuant to the requirements of the United States and Minnesota Constitutions.

92.     Defendants' conduct in failing to accommodate Plaintiffs' requests for religious and/or medical accommodation deprived Plaintiffs of rights under the above Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the United States Constitution.

93.     Defendants' wrongful actions, taken under color of ordinance, regulation, custom and usage of the laws of Minnesota, constitute a deprivation of rights, privileges and immunities as contemplated by 42 U.S.C. § 1983.

94.     Because of Defendants' illegal conduct, Plaintiffs individually have each suffered economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FIFTH CAUSE OF ACTION

### Wrongful Discharge - Minnesota Refusal of Treatment Statute.

95.     Plaintiffs restate and reallege paragraphs 1 through 94 as if fully set-forth here.

96.     Minn. Stat. § 12.39 creates a right for individuals "to refuse medical treatment, testing, physical or mental examination, [or] vaccination. . . ."  The law further requires that those health care professionals administering vaccination notify the individual of the right to refuse the vaccination.  *Id*. § 12.39, Subd. 2 (the "Refusal of Treatment" statute).

97.     The State of Minnesota is no longer under a state-declared "emergency," as Governor Timothy Walz officially ended the State's emergency effective June 30, 2021.

98.     All Plaintiffs have objected to being required to undergo compulsory medical treatment, including invasive injections and vaccinations.  These refusals were protected by Minn. Stat. § 12.39, and constitute a refusal to engage in conduct contrary to Minnesota Public Policy.  As a result of their refusal to accede to the Hospital's imposition of such illegal conditions, the Plaintiffs have been harassed, suspended, discharged (explicitly or constructively), and had their earned benefits taken away.

99.     Defendants' actions in punishing the Plaintiffs for refusing to engage in conduct prohibited by state law and public policy constitutes wrongful discharge.

100p.  As a result of Defendants' illegal actions taken against towards Plaintiffs, Plaintiffs individually have each suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims and issues for which they have a right to trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs above-named pray for judgment in their favor and against Defendants, individually and severally, and for an Order of the Court as follows:

1.      Adjudging that Defendants are liable to Plaintiffs for their actual damages in an amount to be proven at trial, including front pay, back pay, treble damages and statutory penalty, interest, emotional distress and pain and suffering, compensatory damages, punitive damages, and any damages or penalties available at law;

2.      Enjoining Defendants from taking further illegal action against Plaintiffs in violation of both state and federal law, and Ordering Defendants to take action to restore Plaintiffs to their positions they would have enjoyed absent Defendants' illegal conduct;

3.      Awarding Plaintiffs their costs, attorney fees and any other relief permitted by statute; and

4.      Awarding such other relief as the Court may deem just and equitable.


Dated: November 8, 2021                **PARKER DANIELS KIBORT**

                                        *s/ Andrew D. Parker*
                                        Andrew D. Parker (#195042)
                                        Alec J. Beck (#201133)
                                        Justin Boschwitz (#401472)
                                        123 Third Street North – Suite 888
                                        Minneapolis, MN 55401
                                        (612) 355-4100
                                        parker@parkerdk.com
                                        beck@parkerdk.com
                                        boschwitz@parkerdk.com

                                        ***Attorneys for Plaintiffs***